## Edwards's Estate.

*Trusts and trustees—Retention of investments—Power to invest or reinvest at trustees' discretion.*

1. Where a testator authorizes his trustees to retain investments of the trust and make reinvestments in their discretion, the responsibility of the trustees is measured by the exercise of such diligence and care as a man of ordinary care and prudence would exercise in the care of his own estate, and in such case, a reasonable degree of diligence and the exercise of good faith is the standard of the trustees' duty.

2. The testator authorized his executors and trustees and the survivor of them, or his or their successor or successors in the trust, to "retain as investments of the trust hereby created any property, real or personal, and any securities of which I shall die possessed, and from time to time to sell any part thereof and to invest or reinvest in his or their discretion." The trustees retained the testator's investments in the common stock of the Ridge Avenue Passenger Railway Company and the Philadelphia Traction Company for a period of twenty years, during which period the value of the stocks shrank about one-third. There was nothing to indicate that they had not exercised their best judgment in the matter. On a claim by the guardian of a minor to surcharge them: *Held*, that they were not liable.

Exceptions to adjudication.  O. C. Phila. Co., Oct. T., 1903, No. 103.

The facts appear from the following adjudication by GEST, J., Auditing Judge:

Edward B. Edwards died Aug. 15, 1902, leaving a will and two codicils, by items V and VI of which he directed his trustee, C. Stuart Patterson, to hold three-fourths of his residuary estate in trust to divide the income into as many shares as the testator left grandchildren surviving him and to pay one share to his granddaughter, Elsie Edwards, and to pay to his son, Thomson F. Edwards, so many of the shares as he shall have children living at the time of testator's death, and to pay to his daughter, Rebecca B. Love, so many shares as she shall have children living at the time of testator's death, and after the death of Thomson F. Edwards to pay over to his surviving children for life the share of the income which Thomson F. Edwards shall have been receiving during his lifetime, and after the death of his daughter, Rebecca E. Love, to pay to her surviving children for life the share of the income which she shall have been receiving during her lifetime; and under item VII of the will the testator made provision for the payment of the principal to the children of his grandchildren when and as each of his grandchildren shall die leaving a child or children him or her surviving, with further provisions not necessary at the present time to be recited; and by item IX the testator provided as follows: "I hereby authorize and empower my executors and trustees and the survivor of them and his or their successors or successor in the trust to retain as investments of the trusts hereby created any property, real or peronal, and any securities of which I shall die possessed, and from time to time to sell any part thereof and to invest and reinvest in his and their discretion;" and by the XIIth item of his will the testator appointed his son, Thomson F. Edwards, and his friend, C. Stuart Patterson, executors and trustees, and provided that when the survivor of them shall have died, etc., The Philadelphia Trust, Safe Deposit and Insurance Company (now Philadelphia Trust Company) should become executor and trustee, and by codicil dated Feb. 14, 1900, the appointment of Thomson F. Edwards as executor and trustee was revoked for the reasons therein stated.

This account is filed by reason of the death of C. Stuart Patterson, trustee, on Nov. 8, 1924, and the petition for distribution sets forth the names of all the parties in interest, from which it appears that there are eleven grand-

children of the testator who survive him, who are each entitled to one-eleventh of the income. The remaindermen are also stated, most of whom are minors, represented by guardians *ad litem*, and all parties in interest have received notice of the account and all have agreed thereto, except J. Warner E. Love and J. Barry Colahan, guardians *ad litem* of certain of the minors. At the audit, no objection was made by any one except Mr. Colahan, as guardian *ad litem* of Joseph W. E. Love, minor child of Edward B. Love, and guardian *ad litem* of Warner Edwards Love and Charles Ford Love, minor children of J. Warner E. Love, and this objection was made to the retention by the trustee of certain assets of the estate, to wit, 1125 shares of Philadelphia Traction Company and 831 shares of Ridge Avenue Passenger Railway Company, which formed part of the estate owned by the testator at the time of his decease, and were awarded to C. Stuart Patterson as trustee upon the audit of his account as executor.

These securities were carried at the following valuations: 1125 shares of Philadelphia Traction Company, at $99.75 per share, or $112,218.75, and 831 shares of Ridge Avenue Passenger Railway Company, at $315 per share, or $261,756. The market values of these stocks at the close of the account in 1924 were as follows: 1125 shares of Philadelphia Traction Company, at $62 per share, or $69,750, and 831 shares of Ridge Avenue Passenger Railway Company, at $169 per share, or $140,439; but, according to the statement in Mr. Colahan's brief, the valuation of the Philadelphia Traction Company stock should be $64 per share and the value of the Ridge Avenue Passenger Railway Company stock should be $166.26. In 1914 these stocks were worth respectively at their market values, Philadelphia Traction Company $83.75 per share and Ridge Avenue Passenger Railway Company $245 per share.

Mr. Colahan claimed that the accountant should be surcharged with the depreciation of these stocks since 1914, which, in the case of the Philadelphia Traction Company stock, amounts to $22,218.75, and in the case of the Ridge Avenue Passenger Railway Company stock $64,441.25. There was also in evidence a schedule of the market values of these stocks from 1904, when the trust went into effect, to 1924, the date of the death of the trustee, which schedule was prepared by the Philadelphia Stock Exchange and Barnes & Lofland, the well-known auctioneers, and is annexed hereto. Mr. Colahan conceded that the accountant may have been justified in retaining these stocks for a certain period, perhaps the first ten years or until 1914, but their retention, in view of their steady and large decline thereafter, was hazardous and ill-advised and not a proper exercise of the discretion placed in the accountant in item IX of the will above mentioned. Mr. Colahan, therefore, in his brief, assumed the year 1914 as the period at which the stock should have been sold.

The nature of these stocks was fully described in the testimony and the exhibits hereto annexed, which need be only briefly referred to. The Ridge Avenue Passenger Railway Company was consolidated, under the Act of March 8, 1872, P. L. 264, by the merger of the Ridge Avenue and Manayunk Passenger Railway Company, incorporated March 28, 1859, P. L. 264, and the Girard College Passenger Railway Company, incorporated April 15, 1858, P. L. 300, and was leased on Sept. 1, 1892, to the Philadelphia Traction Company for 999 years for the annual rental of $150,000 a year for three years and thereafter at $180,000 a year. The Philadelphia Traction Company, incorporated under the Act of March 22, 1887, P. L. 8, on Oct. 1, 1895, leased all its property and leasehold interests to the Union Traction Company for 999 years at the annual rental of $1,600,000, which latter company assumed the rentals due by the Philadelphia Traction Company on account of the Ridge

Avenue Passenger Railway Company, and on July 1, 1902, the Philadelphia Traction Company leased all its property to the Philadelphia Rapid Transit Company at a rental of $1,600,000, under a lease similar in its terms to the lease of the Philadelphia Traction Company to the Union Traction Company. The Philadelphia Rapid Transit Company, by virtue of these leases and others similar thereto of other traction companies, became, as it still is, the operating company of the entire street passenger railway system of the City of Philadelphia. By these leases, the Philadelphia Rapid Transit Company, having a paid-up capital of $30,000,000, assumed and guaranteed the rentals and dividends of the Ridge Avenue Passenger Raiway Company and the Philadelphia Traction Company. The details of these leases and amalgamations are set forth fully in the testimony of Mr. Ballard, who also described in detail the financial history of the operating company and the various litigations that have occurred concerning the leases of the underlying passenger railway companies, and particularly the cases of the Citizens Passenger Ry. Co. v. Public Service Commission, 271 Pa. 39.

In 1902, when the last-mentioned lease was made, Edward B. Edwards was president of the Ridge Avenue Passenger Railway Company, and had been so for some years. His stock of the Ridge Avenue Passenger Railway Company had been acquired by him, in the first instance, in 1859, and in August, 1902, he owned 1110 shares, 10 shares acquired in 1890, 1000 shares in 1885 and 100 shares in 1887. His will, containing item IX, above referred to, was dated May 8, 1894, reaffirmed by codicils of Feb. 14, 1900, and March 19, 1902.

The securities owned by the testator at the time of his decease on Aug. 15, 1902, the date of his last codicil being the preceding March 19th, were all corporate stocks and bonds. It is very clear that the testator authorized their retention by item IX, because he knew that they were not of the classes of so-called legal investments as specified in the acts of assembly, which have since been modified in section 41 of the Fiduciaries Act of 1917. The initial question, therefore, is what effect shall be given to the authority given to the trustee to retain the investments of which the testator should die possessed? The Act of March 29, 1832, P. L. 193, after referring to investments by trustees in the bonds of the United States, the State of Pennsylvania or the City of Philadelphia, or in real securities, provides that in case the money shall be so invested, the fiduciary shall "be exempted from all liability for loss on the same, in like manner as if such investments had been made in pursuance of directions in the will." I can see no substantial difference between a testamentary direct to invest in certain securities and a testamentary permission to retain investments which the testator had himself made and, in making them, stamped them with his approval. The liability of the trustee in cases of retention of the testator's investments must, therefore, be the same as it would be if he, without any testamentary provisions on the subject, had invested in the classes of securities specified in the act of assembly. In other words, the testator, by his will, has included the securities which he himself owned in the classes pointed out by the act of assembly. If this be so, it follows that the responsibility of the trustee must be measured by his exercise of such diligence and care as a man of ordinary prudence would practice in the care of his own estate: Fahnestock's Appeal, 104 Pa. 46. In that case the Supreme Court said: "A reasonable degree of vigilance and the exercise of good faith is the standard of the trustee's duty." And the same principle was vigorously asserted in Dauler's Estate, 247 Pa. 356, and has recently been applied in Detre's Estate, 273 Pa. 341. In Fahnestock's Appeal, the accountant, as succeeding trustee, retained investments received by him from his

predecessor in the trust. In Dauler's Estate, the trustee retained stock of a national bank in which the testator had been a stockholder and director for many years, and in Detre's Estate the trustee made his investment under a discretionary power in the will. In Bartol's Estate, 182 Pa. 407, however, the facts approached those of the present case more closely, for there the will provided that the trustees might, at their discretion, if they deemed it for the benefit of the estate, retain in their hands as assets "investments which I may possess at the time of my death." The Supreme Court, in reference to that clause of the will, said: "They (the trustees) cannot be held liable for doing what they were explicitly authorized to do." To be sure, the will in Bartol's Estate contained the clause "without liability in case of depreciation or loss," while the will of this testator simply authorized the retention of the securities; but I cannot see that the difference is at all material, for the only reason for expressly authorizing the retention of so-called non-legal investments is to relieve the trustee from that liability, as I think I have shown above in discussing the act of assembly.

The recent case of Taylor's Estate, 277 Pa. 518, was cited on the other side, but, as was intimated in the opinion in that case, the liability of a fiduciary is to be determined with reference to the facts in each case, and in Taylor's Estate the decision turned on the point that there was no discretionary power given to the trustee to invest in securities not expressly specified in the act of assembly, so that Taylor's Estate cannot be regarded as controlling this case.

It will be further noted in the present case that these guaranteed underlying passenger railway stocks were investments of a peculiar kind. The leases, the rentals of which were distributed as dividends, were of such long duration that, for all practical purposes, they should be regarded as annuities, the value of which is determined by current interest rates. When the trust began, over twenty years ago, 4 per cent. may be said to have been the regular interest rate on a well secured investment, but the change of financial conditions since then has caused material alterations. If the interest rate rises to 6 per cent., the value of a 4 per cent. annuity, worth, let us say, $100, is naturally diminished by one-third of its previous market value. Of course, if the trustee could have foreseen the future, he would probably have sold these stocks, and if he had this special knowledge, he might be held responsible if he did not avail himself of it; but this assumes that he had knowledge not possessed by others, for, if everybody had foreseen the course of events, there would have been practically no market for the stocks except at the depreciated price. The trustee is not to be held responsible because he did not know more than others.

It is not without force that the only person who objects to the account is Mr. Colahan, as guardian *ad litem* of the minor child of Edward B. Love and as guardian *ad litem* of the minor children of J. Warner E. Love. Of course, the legal question is not affected by this fact, but it clearly appears that the action of the trustee in retaining these investments has been acquiesced in during a period of over twenty years, although the facts were well known to every one, and the question is only raised after the death of the trustee, which unfortunately deprives us of the benefit of his testimony.

*J. B. Colahan*, for exceptions; *John Hampton Barnes*, contra.

HENDERSON, J., May 22, 1925.—We are of opinion that the Auditing Judge correctly disposed of the questions raised by the exceptions, and, hence, they are dismissed and the adjudication is confirmed absolutely.